**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

EMILY COHEN, *as Next Friend for*
A.C., a minor,

Plaintiff,

v.

INTERLOCHEN CENTER FOR THE ARTS, *a Michigan nonprofit corporation,* INTERLOCHEN ARTS GROUP, a *Michigan nonprofit corporation, d/b/a Interlochen Arts Academy,* DAVID HELDRETH, CAMILLE COLATOSTI, and KRISTINA NICHOLS,

Defendants.

Case No. 26-cv-02598

Hon. Jane M. Beckering

Todd F. Flood (P58555)
Michael D. Weaver (P43985)
FLOOD LAW, PLLC
*Attorney for Plaintiff*
155 W Congress, Ste 350
Detroit, MI 48226
(248) 547-1032
tflood@floodlaw.com
mweaver@floodlaw.com

Kevin T. Sutton (P65364)
Adam Blaylock (P77716)
MILLER JOHNSON PLC
*Attorneys for Defendants Interlochen Center for the Arts, Interlochen Arts Group, Colatosti, and Nichols*
500 Woodward Ave., Ste. 3600
Detroit, MI 48226
(313) 672-6924
suttonk@millerjohnson.com
blaylocka@millerjohnson.com

David A. Nacht (P47034)
Fabiola A. Galguera (P84212)
NACHTLAW, P.C.
*Attorneys for Defendant Heldreth*
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
dnacht@nachtlaw.com
fgalguera@nachtlaw.com

**DEFENDANT DAVID HELDRETH'S MOTION TO DISMISS**

Defendant David Heldreth, by and through his attorneys, NACHTLAW, P.C., moves under

Fed. R. Civ. P. 12(b)(6) to dismiss Counts III, IV, VI, VII, and XI of Plaintiff's Complaint as asserted against him. In support of this motion, Mr. Heldreth states as follows:

1. The only counts asserted against Mr. Heldreth are Counts III, IV, VI, VII, and XI. (ECF No. 1, PageID.25, 28, 32, 35, 41). This motion seeks dismissal of each of those counts.

2. Count III alleges quid pro quo sexual harassment under the Elliott-Larsen Civil Rights Act ("ELCRA"). (ECF No. 1, PageID.25.). The Complaint does not plead facts showing that Mr. Heldreth made a sexual advance, requested a sexual favor, or engaged in other conduct of a sexual nature, much less that he used A.C.'s submission to or rejection of such conduct as a factor in an educational decision. The conduct A.C. allegedly rejected was attending private meetings concerning assignments and grades. (ECF No. 1, PageID.16.).

3. Count IV alleges a hostile educational environment under ELCRA. (ECF No. 1, PageID.28.). The pleaded academic assignments, grading decisions, requests for office meetings, ambiguous statements, and incidental classroom contact do not plausibly describe conduct of a sexual nature that is sufficiently severe or persistent, under an objective standard, to create an intimidating, hostile, or offensive educational environment.

4. Count VI alleges retaliation under ELCRA. (ECF No. 1, PageID.32.). The Complaint does not plead non-conclusory facts showing that Mr. Heldreth knew of protected activity when he made the challenged grading decisions.

5. Count VII alleges assault. (ECF No. 1, PageID.35.). The alleged physical contacts are pleaded as completed contacts, and the remaining allegations concern proposed future meetings and verbal statements, not an act placing A.C. in reasonable apprehension of an imminent battery.

6. Count XI alleges intentional infliction of emotional distress. (ECF No. 1, PageID.41.). The pleaded academic decisions, requests for meetings, statements, and incidental

classroom contacts do not meet Michigan's exacting requirement of conduct that is extreme and outrageous.

7. The grounds for this motion are explained more fully in the accompanying brief in support.

8. Pursuant to W.D. Mich. LCivR 7.1(d), on November 17, 2026, undersigned counsel sought concurrence in the relief requested by this motion by email to Plaintiff's counsel, Todd F. Flood and Michael D. Weaver, describing the nature of the motion and its legal basis. As of the time of filing, Plaintiff's counsel had not responded, and concurrence has therefore not been obtained.

WHEREFORE, Defendant David Heldreth respectfully requests that the Court dismiss Counts III, IV, VI, VII, and XI as asserted against him, with prejudice, and grant such further relief as the Court deems just and proper.

Respectfully submitted,

NACHTLAW, P.C.

/s/ David A. Nacht
David A. Nacht (P47034)
Attorney for Defendant David Heldreth
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
dnacht@nachtlaw.com

Dated: November 17, 2026

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

EMILY COHEN, *as Next Friend for*
A.C., a minor,

Plaintiff,

Case No. 26-cv-02598

v.

Hon. Jane M. Beckering

INTERLOCHEN CENTER FOR THE ARTS,
*a Michigan nonprofit corporation,* INTERLOCHEN
ARTS GROUP, a *Michigan nonprofit corporation,*
*d/b/a Interlochen Arts Academy,* DAVID HELDRETH,
CAMILLE COLATOSTI, and KRISTINA NICHOLS,

Defendants.

---

Todd F. Flood (P58555)
Michael D. Weaver (P43985)
FLOOD LAW, PLLC
*Attorney for Plaintiff*
155 W Congress, Ste 350
Detroit, MI 48226
(248) 547-1032
tflood@floodlaw.com
mweaver@floodlaw.com

Kevin T. Sutton (P65364)
Adam Blaylock (P77716)
MILLER JOHNSON PLC
*Attorneys for Defendants Interlochen Center for the Arts, Interlochen Arts Group, Colatosti, and Nichols*
500 Woodward Ave., Ste. 3600
Detroit, MI 48226
(313) 672-6924
suttonk@millerjohnson.com
blaylocka@millerjohnson.com

David A. Nacht (P47034)
Fabiola A. Galguera (P84212)
NACHTLAW, P.C.
*Attorneys for Defendant Heldreth*
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
dnacht@nachtlaw.com
fgalguera@nachtlaw.com

---

**DEFENDANT DAVID HELDRETH'S BRIEF IN SUPPORT OF HIS MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... iii

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

III. LEGAL STANDARD ..... 3

IV. ARGUMENT ..... 4

a. Count III Does Not Plausibly Allege Quid Pro Quo Sexual Harassment Under ELCRA ..... 4

i. The Complaint Does Not Identify a Sexual Advance, Request for a Sexual Favor, or Other Conduct Sexual in Nature. ..... 5

ii. The Complaint Does Not Allege Rejection of Sexual Conduct Used as a Factor in an Educational Decision. ..... 7

b. Count IV Does Not Plausibly Allege an Objectively Hostile Educational Environment Under ELCRA ..... 8

i. The Alleged Academic Conduct Is Not Plausibly Sexual. ..... 8

ii. Plaintiff's Subjective Inferences Do Not Establish Objective Hostility. ..... 9

iii. The Alleged Conduct Is Not Sufficiently Severe or Persistent. ..... 10

c. Count VI Does Not Plausibly Allege That Mr. Heldreth Retaliated Because of Protected Activity ..... 11

d. Count VII Does Not Plausibly Allege an Assault ..... 13

i. The Alleged Completed Contacts Do Not Plead Apprehension of an Imminent Contact. ..... 13

ii. Requests for Future Meetings and the Challenged Statements Do Not Allege an Imminent Threatened Contact. ..... 14

e. Count XI Does Not Plausibly Allege Conduct Meeting Michigan's Exacting Standard for Intentional Infliction of Emotional Distress ..... 15

V. CONCLUSION ..... 16

CERTIFICATE OF COMPLIANCE ..... 17

CERTIFICATE OF SERVICE ..... 17

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)........................................................................ 3, 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).......................................................... 4

*Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) ............................................................... 14

*Caraway v. Corecivic of Tenn.*, LLC, 98 F.4th 679, 683 (2024)............................................ 4, 17

*Chambers v. Trettco, Inc.*, 463 Mich. 297, 309-310, 614 N.W.2d 910 (2000).............................. 5

*Dalley v. Dykema Gossett*, P.L.L.C., 287 Mich. App. 296, 321, 788 N.W.2d 679 (2010). ......... 18

*Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999).............................................. 12

*Doe v. Alpena Pub. Sch. Dist.*, 515 Mich. 111, 120-21, 28 N.W.3d 613 (2024)........................... 5

*Garg v. Macomb County Cmty. Mental Health Servs.*, 472 Mich. 263, 286, 696 N.W.2d 646 (2005) ............................................................................................................................................ 13

*Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)............................................................................ 11

*Janetsky v. Cty. of Saginaw*, Nos. 166477, 166478, 2025 Mich. LEXIS 1387, at *30 (July 25, 2025) ............................................................................................................................................ 15

*Kalich v. AT&T Mobility*, LLC, 679 F.3d 464, 470 (6th Cir. 2012).................................... 6, 7, 10

*Klemencic v. Ohio State Univ.*, 10 F. Supp. 2d 911, 916 (S.D. Ohio 1998)................................ 12

*Lakin v. Rund*, 318 Mich. App. 127, 131, 896 N.W.2d 76 (2016).............................................. 16

*McMillian v. Postmaster Gen., United States Postal Serv.*, 634 Fed. Appx. 274 (11th Cir. 2015) 7

*Mitchell v Daly*, 133 Mich App 414, 427; 350 NW2d 772 (1984)............................................. 15

*Newbury v. City of Windcrest*, 991 F.3d 672 (5th Cir. 2021) ........................................................ 7

*Nwanguma v. Trump*, 903 F.3d 604, 607 (2018) ......................................................................... 4

*Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81-82 (1998) ............................................... 7

*Pena v. Ingham County Rd. Comm'n*, 255 Mich. App. 299, 310-11, 660 N.W.2d 351 (2003).... 13

*People v. Datema*, 448 Mich 585, 533 NW2d 272 (1995) ......................................................... 16

*Radtke v. Everett*, 442 Mich. 368, 387, 501 N.W.2d 155 (1993) ........................................ 6, 9, 10

*Reese v. James*, 348 Mich. App. 454, 463, 19 N.W.3d 386 (2023)............................................ 15

*Roberts v. Auto-Owners Ins. Co*., 422 Mich. 594, 603, 374 N.W.2d 905 (1985)........................ 18

Stewart *v. Evans*, 275 F.3d 1126 (D.C. 2002) ............................................................................ 11

*Tinkler v Richter*, 295 Mich 396, 401; 295 NW 201 (1940)....................................................... 15

*Trudeau v. Fisher Body Div., General Motors Corp*., 168 Mich. App. 14, 20, 423 N.W.2d 592 (1988)....................................................................................................................................... 19

**Statutes**

ELCRA ........................................................................................................................ 1, 8, 11, 12

MCL 37.2103............................................................................................................................. 4, 8

MCL 37.2402 ................................................................................................................................. 4

MCL 37.2701 ............................................................................................................................... 11

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................................. 3

Fed. R. Civ. P. 8 ............................................................................................................................. 3

## I. INTRODUCTION

The Complaint attempts to transform ordinary academic conduct into sexual harassment by assigning sexual meanings to words and actions that are neither expressly nor inherently sexual. The allegations against Defendant David Heldreth concern astronomy assignments, grading, office hours, classroom movement, and discussions of educational opportunities. (ECF No. 1, PageID.10–16.). They do not include an alleged sexual proposition, a request for sexual contact, a request for a sexual favor, sexual touching, or any reference to a sexual act or body part.

The treatment of the word "telescope" illustrates the problem. A.C. was enrolled in an astronomy course, and the class received an assignment requiring students to examine and draw a telescope. (ECF No. 1, PageID.11.). Yet the Complaint emphasizes that Mr. Heldreth allegedly referred to "his telescope" and asks the Court to infer from those two words, removed from their astronomy-class context, a sexual proposition that he never made. (ECF No. 1, PageID.12.). The Complaint similarly attempts to sexualize an instructional discussion of hand position and stance after A.C. submitted a recording showing her use of a protractor, even though it alleges no nudity, sexual activity, sexual instruction, or sexual request. (ECF No. 1, PageID.11.).

A plaintiff's characterization cannot substitute for facts. Federal pleading rules require factual matter supporting a reasonable inference of liability, not labels, naked assertions, or allegations merely consistent with liability. ELCRA likewise applies an objective standard precisely to prevent liability from turning on a plaintiff's idiosyncratic or subjective interpretation of otherwise non-actionable conduct. Even words with sexual content are not automatically discrimination because of sex, and courts must consider the actual social context in which the challenged words or actions occurred.

Here, the pleaded context is academic and specifically astronomical. Plaintiff's effort to recast astronomy terminology, assignments, office-hour requests, grading decisions, and incidental classroom contact as something perverse does not plausibly allege quid pro quo sexual harassment, an objectively hostile educational environment, retaliation, assault, or intentional infliction of emotional distress. Counts III, IV, VI, VII, and XI should be dismissed.

## II. STATEMENT OF FACTS

A.C. attended Interlochen Arts Academy and was enrolled from January through May 2025 in an astronomy course taught by Mr. Heldreth. (ECF No. 1, PageID.9.). The course was ordinarily reserved for upper-level students, but A.C. enrolled as a freshman because astronomy was a prerequisite for summer programs to which she had been accepted. (ECF No. 1, PageID.10.).

The Complaint alleges that Mr. Heldreth deducted two points when A.C. did not complete part of an after-curfew astronomy assignment and offered alternative assignments through which she could recover them. (ECF No. 1, PageID.10–11.). One alternative required A.C. to record herself using a protractor before a mirror. (ECF No. 1, PageID.11.). After reviewing the recording, Mr. Heldreth allegedly asked A.C. to attend office hours so he could review her hand position and stance. (ECF No. 1, PageID.11.). The Complaint does not allege that the recording depicted nudity, sexual activity, or anything other than A.C.'s use of a protractor.

Another alternative assignment required A.C. to write a poem entitled "Gravity Does Not Ask for Consent." (ECF No. 1, PageID.11.). A separate assignment required students to examine and draw a telescope. (ECF No. 1, PageID.11.). The Complaint alleges that A.C. worked alone, received a zero, and was told that she would need to examine "his telescope" during a private meeting to recover the points. (ECF No. 1, PageID.11–12.). It does not allege that Mr. Heldreth identified a body part, proposed sexual activity, requested sexual contact, or otherwise indicated

that "telescope" meant anything other than the astronomical instrument that was the subject of the assignment.

Plaintiff also alleges that Mr. Heldreth kicked A.C.'s backpack and brushed his leg and thigh against her while passing her desk. (ECF No. 1, PageID.12.). The Complaint does not allege the frequency or duration of any contact, that Mr. Heldreth touched an intimate body part, that he restrained A.C., or that the contact was accompanied by a sexual statement or gesture.

On February 28, 2025, Plaintiff submitted a report about Mr. Heldreth to institutional personnel. (ECF No. 1, PageID.12.). Defendant Camille Colatosti allegedly responded that she would tell him to be more careful, but the Complaint does not allege that Colatosti actually communicated with Mr. Heldreth, when any communication occurred, or what information she conveyed. (ECF No. 1, PageID.12.). The Complaint then alleges that Mr. Heldreth assigned grades of zero when A.C. declined requests to meet with him. (ECF No. 1, PageID.13, 16.).

## III. LEGAL STANDARD

A pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8. To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face, and mere labels, conclusions, formulaic recitations of the elements, and naked assertions without factual enhancement do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A claim is plausible only when the pleaded facts permit the reasonable inference that the defendant is liable for the misconduct alleged; allegations showing only a sheer possibility of unlawful conduct, or facts merely consistent with liability, do not cross the line into plausibility. *Id.*

The factual allegations must raise the asserted right to relief above the speculative level, and a legal conclusion couched as a factual allegation need not be accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). At the pleading stage, the Court views the complaint in the light most favorable to the plaintiff, accepts well-pleaded factual allegations as true, and draws reasonable inferences in the plaintiff's favor, but it does not credit conclusory assertions. *Nwanguma v. Trump*, 903 F.3d 604, 607 (2018), quoting *Twombly*, 550 U.S. A conclusory and/or threadbare recital of an element, unsupported by factual content permitting a reasonable inference of liability, cannot survive dismissal. *Caraway v. Corecivic of Tenn*., LLC, 98 F.4th 679, 683 (2024), quoting *Iqbal*, 556 U.S.; citing *Twombly*, 550 U.S.

## IV. ARGUMENT

### a. Count III Does Not Plausibly Allege Quid Pro Quo Sexual Harassment Under ELCRA

ELCRA prohibits an educational institution from discriminating against an individual in the full utilization of or benefit from the institution because of sex. MCL 37.2402. Discrimination because of sex includes sexual harassment, which ELCRA defines to include unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature where submission to the conduct is made a condition of obtaining education, or where submission to or rejection of the conduct is used as a factor in a decision affecting the individual's education. MCL 37.2103.

The Michigan Supreme Court has confirmed that this statutory definition governs sexual-harassment claims brought in the educational context. *Doe v. Alpena Pub. Sch. Dist.*, 515 Mich. 111, 120-21, 28 N.W.3d 613 (2024). In the analogous employment setting, a quid pro quo claim requires both unwelcome sexual conduct or communication and the use of the plaintiff's

submission to or rejection of that proscribed conduct as a factor in a decision affecting the plaintiff. *Chambers v. Trettco, Inc*., 463 Mich. 297, 309-310, 614 N.W.2d 910 (2000). A quid pro quo claim therefore requires both proscribed sexual conduct and an educational decision tied to the student's submission to or rejection of that conduct. Count III pleads neither component.

**i. The Complaint Does Not Identify a Sexual Advance, Request for a Sexual Favor, or Other Conduct Sexual in Nature.**

The Complaint lists the protractor recording, a request to review hand position and stance, the poem assignment, the telescope assignment, requests for office meetings, the SETI remark, and incidental classroom contact. (ECF No. 1, PageID.11–12, 16, 26–27). A list of academic events does not become sexual conduct merely because the Complaint repeatedly labels it sexual.

ELCRA requires conduct based on sex, meaning that the plaintiff must plausibly show that, but for the plaintiff's sex, the challenged conduct would not have occurred. *Kalich v. AT&T Mobility*, LLC, 679 F.3d 464, 470 (6th Cir. 2012). Conduct that is demeaning, humiliating, rude, or inappropriate does not establish an ELCRA violation absent facts connecting it to the protected classification. *Id.* at 471. ELCRA's objective standard forecloses treating a plaintiff's subjective perception as dispositive; otherwise, liability would turn on idiosyncratic interpretations of conduct. *Radtke v. Everett*, 442 Mich. 368, 387, 501 N.W.2d 155 (1993).

The pleaded facts do not supply the missing sexual content. The protractor recording is alleged to show A.C. using a geometry instrument, and the follow-up request concerned the manner in which she held and used that instrument. (ECF No. 1, PageID.11). The Complaint does not allege nudity, a request to expose any part of her body, a sexual instruction, or a proposed sexual exchange. The poem's title uses the word "consent," but the title refers to gravity, a physical

force; it does not, without additional pleaded facts, amount to a sexual advance or a request for a sexual favor. (ECF No. 1, PageID.11).

The telescope allegation depends entirely on insinuation. The class was astronomy, and the assignment required students to examine and draw a telescope. (ECF No. 1, PageID.11). The alleged follow-up statement used the same word as the instrument under study, and the Complaint does not allege that Mr. Heldreth referred to genitalia or to sexual activity. (ECF No. 1, PageID.12). It instead asks the Court to infer that "his telescope" secretly meant something sexual solely because Plaintiff chooses to hear it that way.

That is not a plausible inference from the pleaded context. The Supreme Court has cautioned that even language with sexual content or connotations is not automatically discrimination because of sex, and that courts must consider the social context because the meaning and impact of words or physical acts depend on the surrounding circumstances, expectations, and relationships. *Oncale v. Sundowner Offshore Servs*., 523 U.S. 75, 81-82 (1998). Here, the immediate context – an astronomy teacher discussing a telescope assignment – undercuts rather than supports Plaintiff's proposed sexual meaning.

Comparable decisions reject attempts to build harassment claims from speculation. In an ELCRA case, no actionable sex-based harassment existed where there were no sexual advances, no indication of sexual interest, no general hostility toward the plaintiff's sex, and no comparative facts showing different treatment based on sex. See *Kalich*, 679 F.3d. A sex-discrimination claim likewise failed where the alleged sex-based motive rested on speculation rather than on facts connecting the challenged conduct to sexual animus. See *Newbury v. City of Windcrest*, 991 F.3d 672 (5th Cir. 2021). An ambiguous phrase did not become actionable sexual harassment merely

because the plaintiff and another listener interpreted it sexually and found it offensive. *McMillian v. Postmaster Gen., United States Postal Serv*., 634 Fed. Appx. 274 (11th Cir. 2015).

Count III offers the same impermissible leap: neutral academic conduct, followed by Plaintiff's asserted sexual interpretation. It does not plead facts making that interpretation plausible.

**ii. The Complaint Does Not Allege Rejection of Sexual Conduct Used as a Factor in an Educational Decision.**

Count III also fails to identify sexual conduct to which A.C. refused to submit. The Complaint alleges that she completed the protractor recording, wrote the poem, and submitted the telescope drawing. (ECF No. 1, PageID.11). Her alleged refusal was declining to attend office hours or private meetings concerning assignments, tests, and grade recovery. (ECF No. 1, PageID.16).

Critically, the Complaint does not allege that Mr. Heldreth asked A.C. to engage in sexual activity at any meeting; it alleges no proposed sexual contact, sexual favor, sexual instruction, or exchange of grades for sexual conduct. (ECF No. 1, PageID.16). It instead labels the meetings themselves sexual because they would have been private. A grade allegedly conditioned on attending an academic meeting is not a grade conditioned on submission to sexual conduct unless the meeting itself involved a sexual demand. Count III pleads only the conclusion that A.C. rejected unwanted sexual conduct, advances, and demands (ECF No. 1, PageID.27); it does not identify a factual sexual demand that she rejected, and Rule 8 does not permit a formulaic conclusion to supply the missing facts. See *Iqbal*, 556 U.S. at 678-684.

Count III alleges neither a plausible sexual request nor the rejection of conduct sexual in nature; thus, the challenged grades cannot plausibly constitute quid pro quo sexual harassment.

Count III should be dismissed.

**b. Count IV Does Not Plausibly Allege an Objectively Hostile Educational Environment Under ELCRA**

ELCRA's hostile-environment provision reaches unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct or communication of a sexual nature that has the purpose or effect of substantially interfering with an individual's education or of creating an intimidating, hostile, or offensive educational environment. MCL 37.2103. The existence of a hostile environment is determined by an objective reasonable-person standard, in the totality of the circumstances, not by a plaintiff's subjective perceptions. *Radtke*, 442 Mich. at 386-87.

That objective requirement is decisive here. Accepting every plaintiff's subjective evaluation would impose liability for conduct offensive only for idiosyncratic reasons, contrary to ELCRA's purpose. *Radtke*, 442 Mich. at 387. Count IV nevertheless depends almost entirely on Plaintiff's subjective reinterpretation of nonsexual academic conduct.

**i. The Alleged Academic Conduct Is Not Plausibly Sexual.**

The protractor exercise, discussion of hand position and stance, poem, telescope drawing, office-hour requests, tests, and grades all arose from Mr. Heldreth's astronomy course. (ECF No. 1, PageID.10–12, PageID.29.). None is inherently sexual, and the Complaint adds no facts showing that Mr. Heldreth directed nudity, requested sexual activity, propositioned A.C., displayed sexual material, or expressly referred to a sexual act or body part.

ELCRA requires conduct on the basis of sex, not merely conduct to which a plaintiff later assigns a sexual meaning. *Kalich*, 679 F.3d at 470-71. Harassment is not automatically discrimination because of sex merely because words carry sexual content or connotations; the

conduct must actually constitute discrimination because of sex, assessed in its social context. *Oncale*, 523 U.S. at 81-82. The astronomy context supplies the ordinary meaning of the challenged language: a "telescope" in an astronomy class is an academic instrument, "hand position and stance" are ordinary terms for reviewing a physical measurement, and the poem describes the operation of a natural force. (ECF No. 1, PageID.11–12).

**ii. Plaintiff's Subjective Inferences Do Not Establish Objective Hostility.**

The governing inquiry requires more than a showing that A.C. subjectively experienced the conduct as offensive; the environment must also be objectively hostile. *Radtke*, 442 Mich. at 394. The same safeguard applies under Title VII: conduct outside an objectively hostile or abusive environment remains beyond the statute even if the plaintiff genuinely finds it offensive. *Harris v. Forklift Sys*., 510 U.S. 17, 21 (1993).

Courts applying that principle reject claims built on unsupported interpretations. Offensive language did not support a claim where the pleaded circumstances showed that the speaker's hostility arose from a gender-neutral dispute rather than the plaintiff's sex. See S*tewart v. Evans*, 275 F.3d 1126 (D.C. Cir. 2002) Alleged rudeness toward women likewise did not establish sex discrimination where the claim of sexual animus was speculative and unsupported by concrete comparative facts. See *Newbury,* 991 F.3d. An isolated, ambiguous expression remained insufficient even assuming the plaintiff interpreted it sexually. See *McMillian*, 634 Fed. Appx.

The Complaint pleads no facts corroborating its proposed sexual meanings. It alleges no express proposition, no sexual gesture accompanying the words, no sexual reference clarifying an otherwise ambiguous phrase, and no comparative conduct toward A.C. or another student that would support Plaintiff's reading. (ECF No. 1, PageID.11–12, PageID.29).

### iii. The Alleged Conduct Is Not Sufficiently Severe or Persistent.

A hostile environment requires more than conduct that is merely unpleasant or offensive. Courts examine the frequency and severity of the conduct, whether it was physically threatening or humiliating rather than a mere offensive utterance, and whether it unreasonably interfered with performance. *Harris*, 510 U.S. at 21. In the educational context, actionable harassment is limited to conduct that is severe, pervasive, and objectively offensive enough to deny access to an educational opportunity or benefit. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999).

The allegations against Mr. Heldreth do not approach that level. The Complaint identifies several assignments and statements over one semester but does not plausibly allege that those academic acts were sexual in the first place, and repetition of nonsexual academic conduct does not create sexual pervasiveness. (ECF No. 1, PageID.10–16).

The physical-contact allegation is also deficient. The Complaint alleges that Mr. Heldreth kicked A.C.'s backpack and brushed his leg and thigh against her while passing her desk, but it does not allege how many times contact occurred, how long it lasted, that he touched an intimate body part, that he restrained or cornered A.C., or that any contact was accompanied by sexual words or gestures. (ECF No. 1, PageID.12). Calling the conduct "repeated" does not supply the facts necessary to assess frequency, severity, or sexual character.

Persuasive authority underscores the deficiency. A hostile-environment claim (under Title IX) failed where much of the challenged interaction consisted of rides, calls, personal discussions, and offers of assistance that the plaintiff later portrayed as improper but that were not objectively shown to be sexual or hostile, and where mere invitations and ambiguous references to sex were not the stuff of which a hostile environment is made. *Klemencic v. Ohio State Univ.*, 10 F. Supp.

2d 911, 916 (S.D. Ohio 1998). Here, Mr. Heldreth is not alleged to have made a sexual proposition, requested a sexual favor, touched an intimate area, threatened sexual contact, or displayed sexual material. (ECF No. 1, PageID.11–12).

A.C.'s age and Mr. Heldreth's role as her teacher are relevant context, but that context cuts both ways: it identifies the parties as a student and an astronomy teacher discussing astronomy coursework, measurements, grades, office hours, and telescopes. It does not permit the Court to disregard the actual content of the alleged conduct or to replace the objective inquiry with Plaintiff's subjective interpretation. Count IV should be dismissed.

**c. Count VI Does Not Plausibly Allege That Mr. Heldreth Retaliated Because of Protected Activity**

ELCRA prohibits a person from retaliating or discriminating against another because that person opposed a violation of the Act or made a charge, filed a complaint, or participated in a proceeding under the Act. MCL 37.2701. A retaliation claim requires protected activity, the defendant's knowledge of that activity, an adverse action, and a causal connection between the protected activity and the adverse action. *Pena v. Ingham County Rd. Comm'n*, 255 Mich. App. 299, 310-11, 660 N.W.2d 351 (2003). The defendant's knowledge is essential: absent facts showing that the defendant knew of the protected activity, the challenged action cannot plausibly be attributed to a retaliatory motive. *Garg v. Macomb County Cmty. Mental Health Servs.*, 472 Mich. 263, 286, 696 N.W.2d 646 (2005).

Count VI alleges that Plaintiff submitted reports to institutional personnel and that "Defendants" knew about the reports because they were directed to institutional agents. (ECF No. 1, PageID.33–34.) Critically, the Complaint does not allege that Plaintiff or A.C. submitted a report

to Mr. Heldreth, copied him on a report, discussed a report with him, or otherwise informed him that protected activity had occurred.

The allegation concerning Colatosti does not cure this defect. The Complaint alleges only that Colatosti told Plaintiff she would tell him to be more careful. (ECF No. 1, PageID.12). It does not allege that Colatosti carried out that stated intention, when any communication occurred, or whether she told Mr. Heldreth that Plaintiff had made a complaint alleging conduct prohibited by ELCRA.

The Complaint instead relies on collective allegations that "Defendants" had knowledge and that the challenged grades followed Plaintiff's February 28 report. (ECF No. 1, PageID.33–34.). Collective allegations do not support a reasonable inference of liability when the complaint pleads no facts specific to the individual defendant, and conclusory allegations against an individual defendant that identify no specific action connecting that defendant to the required element likewise fall short. See *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) ("Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for retaliation") [internal citations omitted].

Temporal sequence does not supply the missing knowledge allegation. The Complaint alleges that Mr. Heldreth began assigning zero grades after the February 28 report, but it does not allege facts showing that he knew the report had been made. (ECF No. 1, PageID.13, 34). Without factual allegations supporting knowledge, the chronology does not permit a reasonable inference that he assigned the grades because Plaintiff engaged in protected activity. See *Garg*, 472 Mich. at 286. Count VI's assertion that Mr. Heldreth retaliated is therefore a conclusion unsupported by facts plausibly alleging his knowledge of the protected activity, and it should be dismissed as to him.

### d. Count VII Does Not Plausibly Allege an Assault

Under Michigan law, a civil assault is an intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward the person of another, under circumstances that create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact. *Reese v. James*, 348 Mich. App. 454, 463, 19 N.W.3d 386 (2023). “The defendant must possess at least 'the apparent present ability' to accomplish the contact. *Tinkler v Richter*, 295 Mich 396, 401; 295 NW 201 (1940) (affirming a jury instruction on assault), quoting 6 CJS, Assault and Battery, § 1, p 796.23 HN33. As to intent, a plaintiff must show that the defendant had ‘either an intent to commit a battery or an intent to create in the victim a reasonable fear or apprehension of an immediate battery.’ *Mitchell v Daly*, 133 Mich App 414, 427; 350 NW2d 772 (1984).” *Janetsky v. Cty. of Saginaw*, Nos. 166477, 166478, 2025 Mich. LEXIS 1387, at *30 (July 25, 2025). A completed offensive touching is a battery, the consummation of an assault, rather than an unsuccessful attempt, and Michigan requires proof of an intent to injure. *Lakin v. Rund*, 318 Mich. App. 127, 131, 896 N.W.2d 76 (2016), quoting *People v. Datema*, 448 Mich 585, 533 NW2d 272 (1995).

Count VII relies on four categories of alleged conduct: kicking A.C.’s backpack and brushing against her; requesting that she attend private office meetings; referring to “his telescope”; and making the SETI statement. (ECF No. 1, PageID.35–36). None alleges an unlawful offer of imminent contact coupled with the apparent present ability to accomplish it.

#### i. The Alleged Completed Contacts Do Not Plead Apprehension of an Imminent Contact.

The Complaint alleges that Mr. Heldreth repeatedly kicked A.C.’s backpack and brushed against her arm and thigh while passing her desk. (ECF No. 1, PageID.12, 35). These allegations

describe contacts that allegedly occurred; they do not identify an offer of contact that A.C. perceived in advance and reasonably understood as signaling an imminent harmful or offensive touching. The Complaint does not allege what movement or gesture A.C. observed, when she observed it, or what imminent contact she anticipated. It instead states the conclusion that Mr. Heldreth's pattern of conduct placed A.C. in reasonable apprehension. (ECF No. 1, PageID.35–36). A conclusory recital cannot substitute for factual content permitting a reasonable inference of liability. *Caraway*, 98 F.4th at 683.

**ii. Requests for Future Meetings and the Challenged Statements Do Not Allege an Imminent Threatened Contact.**

The Complaint alleges that Mr. Heldreth repeatedly asked A.C. to attend private office meetings. (ECF No. 1, PageID.11, PageID.16, PageID.35). Those allegations concern proposed encounters at a different time and place; they do not identify a gesture, movement, offer of contact, or threat of immediate contact when the requests were made. A request to attend a later meeting, without an accompanying act or offer of imminent contact, does not satisfy the requirement of a well-founded apprehension of imminent contact coupled with an apparent present ability to accomplish it.

Likewise, the alleged statement that A.C. would need to examine "his telescope" during a private meeting concerned a proposed future meeting, and the alleged SETI statement concerned conduct by unidentified persons at a different institution. (ECF No. 1, PageID.35–36). The Complaint does not allege that either statement was accompanied by a gesture, movement, offer of contact, or other act creating apprehension of an imminent contact by Mr. Heldreth. Count VII identifies no unlawful offer of imminent contact coupled with the apparent present ability to accomplish it and, therefore, it should be dismissed.

### e. Count XI Does Not Plausibly Allege Conduct Meeting Michigan's Exacting Standard for Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress requires extreme and outrageous conduct, intent or recklessness, causation, and severe emotional distress. *Roberts v. Auto-Owners Ins. Co*., 422 Mich. 594, 603, 374 N.W.2d 905 (1985). Liability is limited to conduct so outrageous in character and so extreme in degree that it exceeds all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community; it does not extend to insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Id*. The Court initially determines whether the alleged conduct may reasonably be regarded as sufficiently extreme and outrageous to permit recovery. *Dalley v. Dykema Gossett*, P.L.L.C., 287 Mich. App. 296, 321, 788 N.W.2d 679 (2010).

Count XI repackages the same events underlying Plaintiff's other claims: advice about summer programs; an after-curfew assignment; deductions and alternative assignments; the protractor recording; office-hour requests; the poem and telescope assignments; grading decisions; the SETI comment; and the alleged kicking of A.C.'s backpack and brushing against her arm and thigh. (ECF No. 1, PageID.41–42).

Taken as true, those allegations do not plausibly describe conduct exceeding all possible bounds of decency. Most concern academic decisions and communications—assigning work, deducting points, proposing alternative work, discussing how work was performed, requesting office attendance, and assigning grades. (ECF No. 1, PageID.41–42). The allegation that these acts were improper, unfair, or pretextual does not transform them into conduct that is atrocious and utterly intolerable.

The remaining allegations depend principally on inferred meanings. The Complaint does not allege that the protractor recording depicted nudity or sexual activity, that Mr. Heldreth expressly requested sexual conduct, or that the poem, telescope, or SETI statements expressly proposed sexual activity. (ECF No. 1, PageID.41–42). Nor does the alleged brushing against A.C.'s arm and thigh describe the kind of overt sexual contact that could support a finding of outrageousness.

Michigan's threshold remains demanding even when alleged conduct is offensive and sexual. The Michigan Court of Appeals held that a supervisor's explicit and "repulsive" sexual proposition, followed by the plaintiff's discharge when she refused it, was insufficient as a matter of law because it did not exceed all possible bounds of decency in the adult workplace. *Trudeau v. Fisher Body Div., General Motors Corp.*, 168 Mich. App. 14, 20, 423 N.W.2d 592 (1988). Although the school setting, A.C.'s age, and Heldreth's position as her teacher provide a different context, Count XI alleges no comparably explicit proposition and no overt sexual touching. Those contextual differences therefore do not supply the missing extreme conduct.

Considered collectively and in context, the pleaded facts allege disputed academic treatment, requests for private meetings, comments susceptible to Plaintiff's asserted interpretation, and limited classroom contact. (ECF No. 1, PageID.41–42.) Because those allegations do not plausibly satisfy the extreme-and-outrageous-conduct element, Count XI should be dismissed.

## V. CONCLUSION

For the foregoing reasons, Defendant David Heldreth respectfully requests that the Court dismiss Counts III, IV, VI, VII, and XI as asserted against him, with prejudice, and grant such further relief as the Court deems just and proper.

Respectfully submitted,

NACHTLAW, P.C.

/s/ David A. Nacht
David A. Nacht (P47034)
Attorney for Defendant David Heldreth
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
dnacht@nachtlaw.com

Dated: November 17, 2026

**CERTIFICATE OF COMPLIANCE**

Pursuant to W.D. Mich. LCivR 7.2(b)(ii), undersigned counsel certifies that this brief contains 4,596 words, including headings, footnotes, citations, and quotations, and excluding the caption, table of contents, table of authorities, signature block, and certificates, as counted by Microsoft Word for Microsoft 365. This brief therefore complies with the 10,800-word limit of W.D. Mich. LCivR 7.2(b)(i).

/s/ David A. Nacht
David A. Nacht (P47034)

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2026, I electronically filed the foregoing Motion to Dismiss and Brief in Support with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ David A. Nacht
David A. Nacht (P47034)